UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CHAMBERS OF
STEPHANIE A. GALLAGHER
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-7780
Fax (410) 962-1812

October 2, 2014

LETTER TO COUNSEL

  RE: *Constance McCarthy v. Commissioner, Social Security Administration*;
    Civil No. SAG-14-495

Dear Counsel:

  On February 20, 2014, Plaintiff Constance McCarthy petitioned this Court to review the Social Security Administration's final decision to deny her claims for Disability Insurance Benefits and Supplemental Security Income. (ECF No. 1). I have considered the parties' cross-motions for summary judgment and Plaintiff's reply memorandum. (ECF Nos. 13, 15, 16). I find that no hearing is necessary. Local Rule 105.6 (D. Md. 2014). This Court must uphold the decision of the agency if it is supported by substantial evidence and if the agency employed proper legal standards. 42 U.S.C. §§ 405(g), 1383(c)(3); *see Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will DENY Ms. McCarthy's motion and GRANT the Commissioner's motion. This letter explains my rationale.

  Ms. McCarthy filed her claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") in January 2011, with a protective filing date of December 14, 2010. (Tr. 148-58). She alleged a disability onset date of April 1, 2007. (Tr. 148, 150). Her claim was denied initially and on reconsideration. (Tr. 65-72, 75-78). A hearing was held on October 15, 2012 before an Administrative Law Judge ("ALJ"). (Tr. 21-60). Following the hearing, the ALJ determined that Ms. McCarthy was not disabled within the meaning of the Social Security Act during the relevant time frame. (Tr. 7-20). The Appeals Council denied Ms. McCarthy's request for review, (Tr. 1-4), so the ALJ's decision constitutes the final, reviewable decision of the agency.

  The ALJ found that Ms. McCarthy suffered from the severe impairments of borderline intellectual functioning, personality disorder, major depressive disorder, and obesity. (Tr. 12). Despite these impairments, the ALJ determined that Ms. McCarthy retained the residual functional capacity ("RFC") to:

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she can stand and walk as much as 6 hours, sit for as much as 6 hours, for a combined total of 8 hours; can only occasionally stoop, crouch, crawl, kneel, balance, and climb stairs. Her work should not involve hazards: ladders, scaffolds, dangerous heights, or dangerous machinery; and she should not have to work in concentrated exposure to heat, cold, humidity, dust, fumes or gases. She can understand,

*Constance McCarthy v. Commissioner, Social Security Administration*
Civil No. SAG-14-21
October 2, 2014
Page 2

> remember, and carry out 1-2 step instructions: unskilled, entry-level work. To reduce work stress, she is limited to working only occasionally around the general public.

(Tr. 15). After considering the testimony of a vocational expert ("VE"), the ALJ determined that Ms. McCarthy could perform jobs existing in significant numbers in the national economy and that therefore she was not disabled. (Tr. 19-20).

Ms. McCarthy raises two arguments on appeal. First, she claims that the ALJ's determination that her intellectual disabilities did not meet or equal a listing was not supported by substantial evidence. Second, she claims that the ALJ's assessment of her RFC also was not supported by substantial evidence. Each argument lacks merit and is addressed below.

Ms. McCarthy first contends that the ALJ should have determined that she satisfied Intellectual Disability Listing 12.05(C) or (D) at step three of the sequential evaluation process. A claimant bears the burden of demonstrating that his impairment meets or equals a listed impairment. *Kellough v. Heckler*, 785 F.2d 1147, 1152 (4th Cir. 1986). Ms. McCarthy did not meet that burden. As a threshold matter, to satisfy both subsection C and subsection D, a claimant must show "[a] valid verbal, performance, or full scale IQ of 60 through 70."[1] 20 C.F.R. Pt. 404, Subpt. P, Appx. 1, Part A § 12.05(C) and (D). The ALJ found that, since Ms. McCarthy's IQ scores ranged from 75-77, she did not meet the requirements of subsection C or D.[2] (Tr. 15, 406). Ms. McCarthy contends that the ALJ erred in reading the Listing to require "an absolute and inflexible value in IQ testing." Pl.'s Mem. 19. However, Ms. McCarthy has not established a legitimate basis for reading a flexibility component into the straightforward IQ requirement. In support of her argument, Ms. McCarthy cites a 1998 case from the Northern District of West Virginia, which relied primarily on language in Listing 12.05 stating that the IQ requirements of subsection C "should be used 'only for reference purposes.'" *See Alderman v. Chater*, 40 Supp. 2d 367, 371 (N.D. W. Va. 1998). However, the "only for reference purposes" language has since been removed from the Listing, and section 12.00 makes clear that the drafters are well aware of the standard deviations typically associated with intelligence tests. *See* 20 C.F.R. Pt. 404, Subpt. P, Appx. 1, Part A § 12.00(D)(6)(c).

Ms. McCarthy also argues that the ALJ improperly failed to consider the accuracy of the IQ test results. She contends that the context of the overall record undermines their accuracy. Pl.'s Mem. 21. However, while an ALJ certainly "has the *discretion* to assess the validity of an

---

[1] A claimant must also show an onset of impairment before age 22 for both subsections. The ALJ concluded that this requirement was satisfied. (Tr. 14).

[2] The IQ test referenced by the ALJ was administered in 2011. Ms. McCarthy also underwent IQ testing in 2006, in which she obtained a Verbal IQ of 68, a Performance IQ of 97 and a Full Scale IQ of 79. (Tr. 256). Although Ms. McCarthy's 2006 Verbal IQ satisfied the requirements of subsections C and D, the ALJ did not err by relying instead on the results of the 2011 test. Not only was the 2011 test administered more recently, but the 2006 test did not include a statement by the test administrator opining as to the accuracy of its results, whereas the administrator of the 2011 test expressed 95% confidence in the accuracy of the test results. *Compare* (Tr. 255-60), *with* (Tr. 405-10).

IQ test result," *Hancock v. Astrue*, 667 F.3d 470, 474 (4th Cir. 2012) (emphasis added), the regulations do not *require* the ALJ to engage in such an assessment. Rather, the regulations state that the examiner who administers the test should, in the narrative report accompanying the test result, comment on whether the results are "considered valid and consistent with the developmental history and the degree of functional limitation." 20 C.F.R. Pt. 404, Subpt. P, Appx. 1, Part A § 12.00(D)(6)(a). In this case, Dr. Collins expressed 95% confidence in the accuracy of the test results. (Tr. 406). Accordingly, the ALJ did not err in relying on Ms. McCarthy's IQ test result, nor did she err in finding that the result did not satisfy the requirements of subsection C or D. Because Ms. McCarthy did not meet the IQ requirement, whether she satisfied the additional requirements of either subsection is irrelevant.[3] *See Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) ("For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify.") (emphasis in original). I therefore find that the ALJ's determination that Ms. McCarthy did not satisfy Listing 12.05 was supported by substantial evidence.

Ms. McCarthy next claims that the ALJ failed to adequately consider her mental impairments in assessing her RFC. The required "special technique" for evaluating mental impairments is set forth in 20 C.F.R. §§ 404.1520a, 416.920a. *Rabbers v. Comm'r of the Soc. Sec. Admin.*, 582 F.3d 647, 652 (6th Cir. 2009); *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008) (citing *Schmidt v. Astrue*, 496 F.3d 833, 844 n.4 (7th Cir. 2007)). The ALJ "must first evaluate [the claimant's] pertinent symptoms, signs, and laboratory findings to determine whether [he or she] ha[s] a medically determinable mental impairment(s)." 20 C.F.R. §§ 404.1520a(b)(1), 416.920a(b)(1). The ALJ must "then rate the degree of functional limitation resulting from the impairment(s)" in four broad functional areas. *Id.* §§ 404.1520a(b)(2), 404.1520a(c), 416.920a(b)(2), 416.920a(c). The ALJ is required to document the application of the special technique in the hearing decision, incorporating pertinent findings and conclusions, and documenting the significant history and functional limitations that were considered. *Id.* §§ 404.1520a(e)(4), 416.920a(e)(4). A Social Security Policy Interpretation Ruling, concerning assessing RFC in initial claims, explains that the ALJ's narrative should discuss a claimant's ability to perform sustained work activities[4] in an ordinary work setting on a regular and continuing basis, as well as the maximum amount of each activity the claimant can perform based on the evidence in the record. SSR 96-8P.

---

[3] Once a claimant has satisfied the IQ requirement, subsection (C) requires the additional showing of "a physical or other mental impairment imposing additional and significant work-related limitation of function," while subsection (D) requires the additional showing of at least two of the following: "(1)[m]arked restriction of activities of daily living; or (2)[m]arked difficulties in maintaining social functioning; or (3)[m]arked difficulties in maintaining concentration, persistence, or pace; or (4)[r]epeated episodes of decompensation, each of extended duration." 20 C.F.R. Pt. 404, Subpt. P, Appx. 1, Part A § 12.05(C) and (D).

[4] Work-related limitations resulting from mental impairments often relate to a claimant's ability to (1) understand, remember, and carry out instructions, (2) use judgment in making work related decisions, (3) respond appropriately to supervision, and (4) deal with changes in a routine work setting. SSR 96-8P.

*Constance McCarthy v. Commissioner, Social Security Administration*
Civil No. SAG-14-21
October 2, 2014
Page 4

      Ms. McCarthy contends that the ALJ's only discussion of her intellectual limitations and their impact on her ability to perform work activities was a "passing remark about borderline intellectual functioning." Pl.'s Mem. 24. However, in her RFC analysis, the ALJ noted that "the record indicates an expressive language disorder and a reading disability," and that Ms. McCarthy "report[ed] that she is accommodated at school by using books on tape, having extra time for tests, having tests read and tutoring." (Tr. 16). However, the ALJ discounted Ms. McCarthy's credibility regarding the limiting degree of her mental impairments, stating that Ms. McCarthy "may well experience social anxiety, depression and difficulties with memory and concentrations [sic] due to a combination of her impairments; however, [Ms. McCarthy's] ability to care for her child, care for her own personal needs, perform household chores, drive, prepare meals, and attend college courses indicate [sic] functioning above" what Ms. McCarthy alleged. (Tr. 17). Moreover, the ALJ stated that "a limitation to simple unskilled work is supported by [Ms. McCarthy's] learning disorder." (Tr. 18). The ALJ's ultimate RFC assessment concluded that Ms. McCarthy was capable of understanding, remembering, and carrying out one-to-two step instructions—unskilled entry level work. (Tr. 15). Moreover, the ALJ acknowledged that Ms. McCarthy was susceptible to work-related stress, and accordingly limited her to only occasional work around the general public. *Id.* The ALJ's narrative is thus replete with instances of her consideration of Ms. McCarthy's intellectual limitations and their impact on her ability to perform work activities. The ALJ also relied upon the State agency psychological assessments, which corroborated the ALJ's views. (Tr. 18, 434-47, 450-53, 469-72, 473-86). Accordingly, I find that the ALJ's RFC assessment adequately documented her application of the special technique, and was supported by substantial evidence.

      For the reasons set forth herein, Ms. McCarthy's Motion for Summary Judgment (ECF No. 13) is DENIED and Defendant's Motion for Summary Judgment (ECF No. 15) is GRANTED. The clerk is directed to CLOSE this case.

      Despite the informal nature of this letter, it should be flagged as an opinion and docketed as an order.

      Sincerely yours,

      /s/

      Stephanie A. Gallagher
      United States Magistrate Judge